## MORRIS HEFLING, Plaintiff, *v.* THE PUBLIC NATIONAL BANK OF NEW YORK, Defendant.

Municipal Court of New York, Borough of Manhattan, Second District,
January 11, 1927.

Banks and banking — action to recover amount of check deposited in savings bank account — bank, thirty-five days after deposit, notified depositor that payment had been stopped and charged check to depositor's account — bank acted as agent for collection of check — failure of bank to notify depositor that payment had been stopped was negligence, for which bank is liable — notification by bank did not constitute rescission of relationship between it and depositor — depositor entitled to full amount of check.

This is an action by a depositor in defendant savings bank to recover the amount of a check indorsed to him and deposited in said bank on August 13, 1925. The depositor was notified on September seventeenth that payment had been stopped, and the check was charged against his account. The evidence shows that for at least three weeks after the check was deposited the maker thereof was actively engaged in business and that for some days after the deposit it had sufficient funds to its credit with which to meet the check.

The bank acted as agent for the collection of the check, and since the evidence shows that it was negligent in not notifying the depositor of the fact that payment on the check had been stopped, it is liable.

There is no proof of a rescission of the relationship between the parties and the abandonment thereof by what transpired on the seventeenth of September, and consequently the defense predicated thereon is not available to the bank.

In the absence of evidence that the plaintiff could have recovered or that he still can recover, or that he was at any time able to recover on this check as against the indorser or the drawer, he is entitled to recover the full amount of the deposit.

ACTION by depositor against a savings bank to recover amount of a check deposited for collection on theory that bank was negligent in failing to notify plaintiff that payment had been stopped.

*Abraham M. Davis,* for the plaintiff.

*Moses & Singer,* for the defendant.

PANKEN, J. On August 13, 1925, at which time the plaintiff herein had an account with the defendant, the Public National Bank of New York, said account being a savings account, a check drawn by the Gold Medal Provision Company, Incorporated, through its officers, against the Globe Exchange Bank of New York, to the order of Louis Bender, and indorsed by said Bender, and then in turn indorsed by the plaintiff herein, was deposited by him with the defendant. The entry in the pass book issued by the defendant to the plaintiff and marked in evidence, reads as

follows: " August 13, 1925, six hundred," then some initials, then " C. K. 600," then " $1739.90," the last numerals being the total then to the credit of the plaintiff.

The check on the face of it shows that payment was stopped thereon. The date, however, when payment was stopped is not disclosed nor when the stamp was placed upon the check by the drawee bank.

The plaintiff was not informed of the fact that payment was stopped upon the check deposited by him until the 17th of September, 1925, a period of thirty-five days after the check was deposited. There is evidence in the case that a notice was sent by the defendant to the plaintiff, but was addressed to 77 Forsyth street instead of 77 East Fourth street, of which address there was a record in possession of the defendant. On the 18th of September, 1925, the check was returned to the plaintiff, and the receipt for the check was dated instead of the 18th of September, 1925, August fifteenth of the same year. The proof is that the plaintiff objected to the change in date; there is also proof that he made some claim for the money from the bank at that time, inquiring as to " what would become of his money."

There is testimony that beginning August thirteenth and on some days thereafter there were sufficient funds to the credit of the drawer of the check with the drawee bank to pay the sum called for by the check in evidence. There is also testimony that up to the tenth of September or thereabouts the drawer was actively engaged in business; that on or about September tenth the business was closed down, although it continued to deposit various sums of money up to and including the 6th of October, 1925; and that on October seventh the drawer was petitioned into bankruptcy. Substantially these are all of the facts testified to in the course of the trial.

The plaintiff seeks to recover the $600 in this action, on the theory that the defendant was negligent. Negligence on the part of the defendant was amply proven. The defendant admits its negligence. It relies, *first*, on the defense that there was a mutual rescission and termination and abandonment of the transaction between the plaintiff and the defendant. The question arises, therefore, as to whether the defendant in this case became the owner of the check deposited with it on the 13th of August, 1925, or whether it acted merely as the agent for the plaintiff for collection purposes.

The pass book in evidence across the top of the inner pages reads as follows: " It is agreed that this account is opened with this bank subject to the rules and regulations printed in this pass

book and in the signature book." The rules appear at the back of the pass book. One of the rules reads as follows: " Checks, drafts and money orders will be credited subject to withdrawal only after actual payment of same." Then the last rule reads: " Acceptance of this book shall be considered an assent to these rules and regulations." The pass book issued to the plaintiff constitutes the contract between the plaintiff and the defendant.

If on the thirteenth or fourteenth of August the sum credited to the plaintiff was not withdrawable by him, as in fact it was not, the notation that the deposit was by check I assume was made to apprise the paying teller of that fact and put him on notice so that he may make inquiry as to whether collection of the check was made. The credit was provisional in character; it was conditional upon the collection by the bank of the amount called for by the check deposited. It was not a credit.

In *Heinrich* v. *First National Bank of Middletown* (219 N. Y. 1), to which the defendant refers in its brief, the court (at p. 5) says: " We think the loss has been rightly cast upon the bank. The checks were credited as money, and were endorsed by the payee without restriction. The defendant did not hold them as a mere agent for collection. It held them as owner."

In the same case Judge CARDOZO evidently makes a distinction between a " checking account " and an account which draws interest. He says (on p. 3): " He had two accounts, one a general account in which the deposits were subject to payment by check, and the other an account in the ' Interest Department,' in which deposits drew interest, and were subject to rules similar to those that are common in savings banks."

The plaintiff's account was not a checking account. One of the rules in the back of the pass book reads: " Drafts against this account will be honored only when presented with the pass book by the depositor in person at this bank. The depositor waives the right to draw checks, drafts or notes against this account." The bank has specifically by its rules provided that no payment will be made against checks out of the account of the plaintiff. Nor will there be an actual credit in favor of the depositor before actual collection is made upon checks deposited.

The deposit on the thirteenth of August was not considered by the bank as a deposit of money. It was characterized as a check deposited. The pass book is before me. This is the only instance where a deposit was so designated. The charge made by the defendant as against this deposit shows again that the account was charged by reason of the non-payment of the check. The proof is conclusive that the check mentioned in the pass book

given to the plaintiff was the one which he had deposited on the 13th of August, 1925.

In the case of *Metropolitan National Bank* v. *Loyd* (90 N. Y. 530, 535) the court says: " It is true no express agreement was made transferring the check for so much money, but it was delivered to the bank and accepted by it, and the bank gave Murray credit for the amount, and he accepted it. That was enough. The property in the check passed from Murray and vested in the bank. He was entitled to draw the money so credited to him, for as to it the relation of debtor and creditor was formed, and the right of Murray to command payment at once was of the very nature and essence of the transaction."

Then further on the court expresses itself in the following language: " The check, therefore, for every purpose material upon this inquiry, as between these parties was money."

In the case at bar the check was not treated by the defendant as money, nor was it treated by the plaintiff as money. The rule under which the deposit was made by the plaintiff excluded specifically the possibility of commanding payment by the bank or drawing against the credit given. The defendant treated the deposit as a check deposit, and not as a money deposit, and so indicated it in the record made on its pass book issued to the plaintiff.

To determine the relationship between the plaintiff and the defendant with respect to the check at issue, the notation on the pass book showing the deposit of the check in issue must be considered. The question is, was the deposit of the check treated as money, or was it treated as a collection item? If it were treated as money, the notation that the deposit was by a check is unexplained. In fact, the bank could only have title to the check if it treated the deposit by the plaintiff as money.

As it is said in the case of *Lyons* v. *Union Exchange National Bank* (150 App. Div. 493, 495): " Where a check is deposited by a customer in a bank in the ordinary course of business and is accepted and credited as money the title passes to the bank, even though there be no express agreement."

The notation in the pass book in evidence, "July 1, 1925, interest A 1314 $1753.04," was made evidently after the deposit of the check for $600, some time between the 13th of August, 1925, and the eighteenth of September of the same year. The witness Miss Nathanson testified that it could not have been made on the fifteenth or subsequent to the 15th of August, 1925. That testimony is her conclusion. The testimony of the person who made the entry should have been submitted to prove when this entry was made.

Municipal Court of New York, January, 1927.          [Vol. 128

It is made by a person other than the one who accepted the deposit of the check of $600 on the thirteenth of August. This entry having been made subsequent to the 13th of August, 1925, it would seem that the defendant had not apprised the plaintiff of the fact that payment was stopped upon the check when the pass book was presented for the entry of July 1, 1925.

The evidence of the defendant as to its conduct with relation to charging the account of the plaintiff with the item credited does not disclose that it treated the deposit as an absolute and unqualified credit. No interest was allowed to the plaintiff on the deposit or credit for the period the amount stood to his account.

I am mindful of the fact that the usual rule applicable to interest being allowed on savings accounts is that interest is earned only on given dates. Some savings banks permit quarterly interest; some savings banks allow interest upon the credit on a monthly basis. There is no evidence before me as to what rule obtained in the defendant bank. The plaintiff, if interest was computed on the basis of monthly balances, would be entitled at least to interest for the period that the amount stood in his name at the bank, considering the deposit on the thirteenth of August as a credit to plaintiff, and the acquisition of title by itself to the check. No such interest was allowed the plaintiff.

I am unable to arrive at any other conclusion, upon all of the evidence in the case, than that the deposit was for collection, and that it was so treated by the bank; that the check was not transferred by the plaintiff to the defendant.

Having arrived at that conclusion, it follows as a matter of course that the defense of a rescission and an abandonment of the relationship by what transpired on the 17th of September, 1925, is not available to the defendant. There is not satisfactory proof before me of a rescission of the relationship or an abandonment thereof.

The bank acted as an agent for the plaintiff. In the performance of its services to the plaintiff it was negligent. Plaintiff is, there-fore, entitled to recover from the defendant the damage which he was caused by such negligence.

That brings me to the consideration of the question as to what the measure of damage in this case is. It has been held in many cases that under certain circumstances the face amount of the instrument in issue is the measure of damage. As has been held in the case of *Stark* v. *Public National Bank* (123 Misc. 647): "But where an indorser or other party to the instrument has been released by the failure of the collecting agent to present it, although the instrument is returned to the holder, the latter has

been damaged, at least to the extent of having lost his claim and right of action against the party released, and in such a case the face of the instrument is *prima facie* the amount of his damage." (Citing *First National Bank of Meadville, Pa.* v. *Fourth National Bank of City of New York,* 89 N. Y. 412, 417, as authority.)

In the case at bar the plaintiff lost his right to an action as against the drawer of the check. The drawer having been petitioned into bankruptcy, it was no longer amenable to suit for recovery of the amount of the check.

Though there has been proof submitted that the drawer had sufficient funds at various times after the 13th of August, 1925, on deposit in the drawee bank to satisfy the check in issue, that proof is not helpful in the determination of the rights of the parties. The redepositing of the check would not change the situation created by the act of the drawer in having stopped payment thereon.

There is, however, ample proof in the case before me that stopping payment upon the check was unwarranted, the check having been issued for a valuable consideration; and in any event was in the hands of an innocent holder for value when payment was stopped thereon. There was no defense available to the drawer of the check as against the plaintiff herein.

When the plaintiff was informed of the fact that payment was stopped upon the check, the evidence shows the place of business of the drawer was already closed. The time that elapsed between that period and the time the drawer was petitioned into bankruptcy is not an unreasonable period of time for the plaintiff to have taken in considering what his remedy might be. The testimony of the plaintiff elicited on cross-examination, with relation to how he had retained his attorney, is palpably untrue, unworthy of credence. I do not believe it. I am rather inclined to the opinion that he was sent to his attorney by his brother-in-law.

Judges hear very often stories which are false and absurd; unfortunately too often. That testimony, however, is not with reference to any material fact in the case. On the material facts there is no serious conflict in the testimony between the defendant and the plaintiff; substantially there is agreement.

In *Stark* v. *Public National Bank* (*supra*) the court further says: "The collecting agent, however, may offer proof to show that in fact the holder was not damaged, either because the released party was not solvent at the time the presentment should have been made, or that the party remaining liable, if there be one, is solvent, or by showing other pertinent facts."

There is no evidence before me showing that the plaintiff could have recovered, or that he still can recover, or that he was at any

time able to recover on this check as against the indorser or the drawer.

Again, in the same case, the court says: "The ground of distinction between the decisions seems to be that where the holder has lost something, even if it be but a right of action against one party liable on the instrument, there is presumptively a damage although there be no proof of the holder's inability to collect from some other person on the instrument. Then the rule becomes operative that the face of the instrument is *prima facie* the amount of the loss."

Following the rule laid down in *Stark* v. *Public National Bank* (*supra*), I must find that the measure of damage is the face amount of the check.

Judgment accordingly.