KRISTOFIK, APPELLANT, *v.*
BANK ONE, AKRON, N.A., APPELLEE.

(No. 12622 — Decided November 26, 1986.)

*Fred J. Deuber,* for appellant.
*Wayne H. Calabrese,* for appellee.

*Per Curiam.* Plaintiff-appellant, John R. Kristofik, appeals the granting of summary judgment pursuant to Civ. R. 56 to defendant-appellee, Bank One, Akron, N.A. This court affirms.

Frank Stossel, Kristofik's uncle, purchased a certificate of deposit payable to "Frank C. Stossel or John R. Kristofik * * * upon surrender of this certificate properly endorsed. * * *" The certificate further provides:

"4. In the event this certificate is issued payable to two or more persons, payment may be made to any one of them during their joint lives and upon the death of any one or more of them all of the right, title, and interest to the certificate shall vest absolutely in the survivor or survivors jointly. * * *"

It is undisputed that the funds used to purchase the certificate were entirely those of Stossel. Kristofik retained possession of the certificate.

In late March 1983, Stossel became ill and was hospitalized. On April 6, 1983, Stossel executed an affidavit form provided by the bank declaring that the certificate was lost, so that the money could be transferred from the joint certificate to one in his name only. This transaction was completed by Stossel's attorney at Stossel's request. When Kristofik learned of this, he

presented the original certificate to the bank and sought to have it honored. The bank refused, since the certificate had already been redeemed.

After Stossel's death on April 18, 1983, two wills were admitted to probate. A jury determined that Stossel's entire estate, including proceeds of the certificate of deposit in question, should go to Kristofik. In this case, Kristofik seeks recovery against the bank for breach of contract and wrongful conversion as to the certificate of deposit, claiming damages as a result of having to expend funds to secure return of the certificate proceeds.

### Assignments of Error

"1. The court erred in finding that defendant was entitled to judgment as a matter of law.

"2. The court erred in overruling plaintiff's motion for summary judgment on the issue of liability alone.

"3. The court erred in its finding of fact that plaintiff would not release the 'CD.'

"4. The court erred in failing to give legal effect to the provision on the face of the CD that the CD will be repaid to the above depositor upon SURRENDER OF THE CERTIFICATE PROPERLY ENDORSED."

Although Kristofik recites four assignments of error, he makes but one argument: that the language of the certificate of deposit created a contract between the bank and the two persons named on the certificate which bound the bank to pay whoever presented the certificate for redemption. The real issue, however, is: What are the rights of the holders as joint tenants in a certificate of deposit with a survivorship provision prior to the death of either of the parties?

A joint and survivorship account belongs, during the lifetime of the parties, to the parties in proportion to the net contribution by each to the sums on deposit, unless there is clear and convincing evidence of a different intent. *In re Estate of Thompson* (1981), 66 Ohio St. 2d 433, 20 O.O. 3d 371, 423 N.E. 2d 90, paragraph one of the syllabus. Kristofik himself acknowledged that Stossel alone contributed the funds to purchase the certificate. He admitted that he knew he was to receive the money only upon Stossel's death. Furthermore, if Stossel had need of the money, Kristofik understood that he was to surrender the certificate to him. There was no evidence that Stossel intended for Kristofik to have use of the money prior to Stossel's death. Clearly, during his lifetime, Stossel was the sole owner of the funds represented by the certificate and entitled to do as he pleased with them. *Thompson, supra; Gillota* v. *Gillota* (1983), 4 Ohio St. 3d 222, 4 OBR 576, 448 N.E. 2d 802.

Possession of the certificate is merely evidence bearing upon the question of the intent of the depositor and the intent is undisputed here. See 9 Ohio Jurisprudence 3d (1979) 101, 102, Banks and Financial Institutions, Section 148. Stossel could revoke the joint account at any time and there is nothing to indicate that the revocation had to be by any particular method. The affidavit Stossel executed unequivocally expressed his desire to terminate the arrangement. The bank officer who provided the affidavit knew the money had originally been deposited by Stossel. While the bank officer had been informed by Stossel's attorney that Stossel was very sick and not expected to live, there was nothing to suggest that Stossel's decision to redeem the certificate was coerced by anyone or that his signature was anything but voluntary. No one has argued that it was not genuine. (The complaint admits that Stossel executed the affidavit and the bank officer testified that the signature was legible, although

shaky.) While the bank may have been acting at its own peril in accepting representations of ownership on behalf of Stossel, the bank cannot now be faulted for giving the money to its rightful owner upon instructions delivered by Stossel's legal representative. Thus, the bank is protected under R.C. 1107.08(A), which reads:

"When a deposit is made in the name of two or more persons, payable to either, or the survivor, such deposit or any part thereof, or any interest thereon, may be paid to either of said persons, or the guardian of his estate, whether the other is living or not, and the receipt of acquittance of the person paid is a sufficient release and discharge of the bank for any payments so made."

The Indiana case upon which Kristofik relies is distinguishable upon its facts. In *Badders* v. *Peoples Trust Co.* (1957), 236 Ind. 357, 140 N.E. 2d 235, the owner of funds deposited them in a joint savings account and held the passbook. The bank allowed the other person named on the account to withdraw the full amount without the passbook and without the owner's knowledge or consent. The passbook clearly stated that the book " 'must be presented when money is deposited or withdrawn * * *.' " *Id.* at 359, 140 N.E. 2d at 236. The court ruled that provisions of a statute similar to Ohio's did not prevent the bank from enlarging its liabilities by contract and that the above provision represented a valid agreement between the bank and its depositor which rendered it liable when funds were allowed to be withdrawn without the passbook.

The language of the certificate here does not establish such an agreement. It simply says the certificate is "payable" upon surrender "properly endorsed" and that "payment may be made" to any one of the persons to whom it was issued. It does not, as the passbook in *Badders* did, mandate presentment before payment.

Furthermore, the Indiana case does not address the intent of the parties as to ownership, which is the pivotal issue under Ohio law. *Thompson, supra.* It should be noted, however, that the actual owner did prevail in the Indiana case.

Kristofik also argues the bank acted in bad faith because it knew the certificate was not lost. Under the facts of this case, where the bank acted properly upon Stossel's instructions, it is irrelevant whether or not the bank had knowledge of the whereabouts of the certificate. *Kristofik* v. *Great Northern Savings Co.* (Mar. 19, 1986), Summit App. No. 12294, unreported.

Kristofik's assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

GEORGE and QUILLIN, JJ., concur.

QUILLIN, J., concurs separately.

MAHONEY, J., dissents.

QUILLIN, J., concurring. It is undisputed that the bank paid out to the true owner of the funds. No one else had any claim on those funds. Nothing else matters. No harm — no foul.

MAHONEY, P.J., dissenting. This case is before us following the granting of summary judgment. It does not involve the "realities of ownership." The "realities" concern only the owners of the money market certificate of deposit. It does not matter to the bank which owner's money was used to purchase the certificate. The relationship or agreement between the owners can be a constantly changing situation. *In re Estate of Thompson* (1981), 66 Ohio

St. 2d 433, 20 O.O. 3d 371, 423 N.E. 2d 90:

The owners contracted with the bank for a joint or survivorship certificate of deposit which on its face required surrender of the certificate before payment. Bank policy or rules required that both joint owners execute a "lost certificate" affidavit or indemnity agreement if it in fact was lost. Here, the bank admittedly violated its own rules by paying out to one joint owner without surrender of the certificate, when it had knowledge that the certificate was not lost. A jury could reasonably conclude from the record before the court on this summary judgment that the bank was negligent and should respond in damages.

The case of *Badders* v. *Peoples Trust Co.* (1957), 236 Ind. 357, 140 N.E. 2d 235, is on all fours with this case, *i.e.,* Peoples Trust, just as Bank One did here, enlarged its responsibility by contract.

Additionally, there are disputed facts surrounding the purported signatures of Stossel on both the "lost certificate and indemnity agreement" and the withdrawal draft. A jury could reasonably conclude from the totality of circumstances that the bank officer did not act as a reasonable man in accepting the "signatures" as genuine, voluntary, and knowledgeable when he knew Stossel was on his deathbed and being urged by relatives to "cut off" the plaintiff's rights as a survivor which he held by contract with the bank.

The bank seeks to avoid liability under R.C. 1107.08(A). However, this statute in my opinion only protects against the "realities of ownership" when the bank disburses to either joint owner in accordance with their contract. Here, the contract required surrender of the certificate, or in lieu thereof, the signature of both joint owners on a "lost" affidavit. The statute does not give them immunity. It merely protects the bank against the "other" depositor when it disburses the proceeds to one of them in accordance with their contract. When it executes its contract negligently, it is liable.

Likewise, the bank chooses to ignore the enlargement of its contract, and attempts to rest behind R.C. 1107.06(F). Even so, its statutory obligation under R.C. 1107.06(F) may only be waived for "good cause." Certainly, "good cause" raises factual issues and is a jury question.

The bank justifies its actions by relying on the "realities of ownership" rather than the actual contract. Thus, it states that it only did what the true owner wanted and Kristofik eventually got the money anyhow. The undisputed facts are that Kristofik and his father had provided Stossel with a home for seven years. Stossel wanted his nephew to inherit everything from him. He made out his will to Kristofik and also made him a joint owner on his certificates of deposit. Thus, Kristofik had a contract to be a surviving owner of that account. Stossel gave him the certificate as evidence of that interest. Kristofik had a right to rely on the bank's keeping its bargain by requiring a surrender of the certificate before disbursal. Then, if Stossel wanted the certificate to make a change, he (Kristofik) would have given it to him as was their understanding. Thus, what happened here could have been prevented, that is, relatives pressuring the dying Stossel to change his will and the survivorship accounts for their own benefit. There is nothing to indicate that the "scratches" on the documents were made freely, and voluntarily by a man of sound mind. Certainly, the facts of this case should have raised a red flag in the eyes of the bank officer and he should have at least contacted Kristofik.

The majority opinion indicates some reliance on a previous decision of this court in *Kristofik* v. *Great Northern Savings Co.* (Mar. 19, 1986), Summit App. No. 12294, unreported. However, that case is distinguishable on its facts since the record there did not show a contract requiring surrender of the passbook or certificate prior to disbursal.

In conclusion, I want to emphasize that this is a summary judgment proceeding. Certainly, there is at least a conflict as to what the contract was between the bank and its depositors. Maybe Kristofik will have a difficult time establishing damages but he has a cause of action for breach of his contract. The "realities of ownership" only have a bearing on damages, *not* their contractual rights.

I would grant summary judgment for the bank on the fraud and conversion causes of action in the complaint but deny summary judgment on the negligence cause of action.